# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **CEDRIC B. LONG,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )   **CIVIL ACTION NO.** |
| | )         **3:07-CV-0629-KOB** |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
|     **Defendant.** | ) |

## MEMORANDUM OPINION

Having reconsidered its earlier memorandum opinion and final order affirming the Commissioner's denial of Claimant's application for disability benefits, the court VACATES its prior memorandum opinion (doc. 11) and SUBSTITUTES the following revised memorandum opinion:

### I. Introduction

The claimant, Cedric B. Long, brings this action seeking judicial review of a final decision of the Commissioner of Social Security that denied his claim for Social Security Disability Insurance benefits ("SSDI") and Supplemental Security Income ("SSI").

The claimant filed his claim on February 10, 2004, alleging that he has been disabled since September 11, 2001 due to asthma, shortness of breath, and chest pain. (R. 79-88). The Social Security Administration ("SSA") initially denied the claimant's application on June 22, 2004 and an Administrative Law Judge ("ALJ") did likewise on October 21, 2005 after holding a hearing on August 11, 2005. (R. 20-30, 31-32). The claimant appealed to the Social Security Administration Appeals Council, which, on March 3, 2006, granted review under the substantial evidence provision

1

of the SSA regulations and remanded the matter to the ALJ. (R. 47-48). On remand, the ALJ again denied the claim on October 31, 2006. (R. 8-18). The Appeals Council denied review of the ALJ's remand decision on February 2, 2007, rendering the ALJ's opinion the Commissioner's final decision. (R. 4-6). Thus, this case is now ripe for judicial review pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). The decision of this court is to REVERSE and REMAND the Commissioner's denial of SSDI and SSI benefits.

## II. Legal Standard of Review

A person is entitled to disability benefits when he or she cannot

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period if not less than 12 months.

42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently employed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments as set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520, 416.920.

The ALJ must accord substantial weight to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause exists for not doing so. *See Phillips v. Barnhart*,

357 F.3d 1232 (11th Cir. 2004). Good cause to discount a physician's opinion exists where (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* at 1240-41 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Further, where the ALJ disregards the opinion of a treating physician, the ALJ must clearly articulate his reasons. *Id.* at 1241.

A three-part "pain standard" applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

### III. Standard of Review

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if his factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. The Commissioner's factual determinations, however, are not reviewed *de novo*, but are affirmed if supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support

3

a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999.  A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but the court must also view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

### IV. Facts

The claimant was born December 13, 1971 and was thirty-three years old at the time of the initial administrative hearing.  (R. 56, 218).  He measures seventy inches tall, and his body weight has fluctuated from a low of 220 pounds in November 2004 to a high of 234 pounds in December 2005.  (R. 155, 160, 193).  He is a high school graduate who worked as an automobile detailer, a furniture deliverer, a shipping clerk, and a hospital janitor.  (R. 81, 86, 105-10).  He is insured for benefits through March 2006.  (R. 59).

On March 1, 2001, the claimant complained of general weakness, nasal drainage, and coughing at the Helen Keller Hospital Emergency Department.  The emergency department gave him a nebulizer treatment with Albuterol for head and chest congestion and excused him from work that day and the next.  (R. 136-39).  The record includes no medical evidence between March 2001 and May 2004.  On May 24, 2004, Dr. Bruce Laughlin conducted a consultative examination on the claimant that showed no prolongation of expiratory phase, no wheezing, no rales, no rhonchi, and no dyspnea.  (R. 141.)

The record indicates that the claimant visited a clinic for examination and treatment eleven times between July 15, 2004 and June 13, 2006.  (R. 140-41, 142-48, 150-60, 191-93). A nurse practitioner assessed the claimant to suffer from, among other things, asthma, hypertension,

dizziness, and acute sinusitis on August 4, 2004. (R. 158-60). On August 19, 2004, after the claimant had some time earlier exhausted his supply of Albuterol and his blood pressure had elevated to 160/110 with a recheck of 150/94, the nurse practitioner assessed, among other things, acute bronchitis, dyspnea, wheezing, and cough. (R. 155-57). On November 19, 2004, the nurse practitioner assessed mild dizziness and hypertension. (R. 154). On January 3, 2005, after the claimant complained of night asthma attacks, and a complete lack of sleep, the nurse practitioner assessed dyspnea, wheezing, hypertension, and asthma. (R. 153). After a January 27, 2005 follow-up blood pressure check, the nurse practitioner assessed the claimant, who again presented with "mild" symptoms, to suffer dizziness and hypertension. (R. 152). On February 25, 2005, the nurse practitioner assessed the claimant as having wheezing, cough, and asthma after the claimant once again presented with "mild" symptoms. (R. 151). On April 11, 2005 the clinic referred the claimant, who had presented on April 4, 2005 with wheezing and mild dizziness, to Dr. Felix A. Morris for a sleep study. (R. 149-50).

Dr. Morris examined the claimant on April 29, 2005, noting initially that the claimant had wheezes and ordering a sleep study. (R. 171-74). Dr. Morris oversaw a sleep study on May 4, 2005. (R. 175-81). This study showed a "very severe obstructive sleep apnea with a RDI [respiratory disturbance index] of 90 that drops to an RDI of 13 on CPAP [continuous positive airway pressure machine setting] of 9." (R. 175). After directing that the claimant sleep on CPAP of 10, Dr. Morris examined the claimant again on June 3, 2005 and found the claimant's lungs to be "clear." (R. 171).

At the behest of the claimant's attorney, Dr. Diane McCutcheon completed a medical source statement dated August 18, 2005. (R. 182-86). In this statement, Dr. McCutcheon listed the claimant's diagnosed conditions as asthma, obstructive sleep apnea, hypercholesterolemia, and hypertension. (R. 183). She stated that tests had shown "restrictive lung disease" and opined that

5

the claimant suffered from "disabling shortness of breath." (R. 184). She found that the claimant could not climb, balance, stoop, kneel, crouch, crawl, or work in high, exposed places; that the claimant could only occasionally push/pull and reach overhead; that the claimant could not lift or carry objects weighing greater than ten pounds; that the claimant could walk for one hour, stand for two hours, and sit for four hours in an eight-hour day; that the claimant could tolerate occasional exposure to vibration, close proximity to moving mechanical parts, and driving; and that the claimant could not tolerate extreme temperatures, wetness, humidity, or exposure to fumes, noxious odors, dusts, mists, gasses, or poor ventilation. (R. 185-86).

On July 17, 2006, the claimant performed a spirometry test. (R. 195-96). In a single breath without the use of a bronchodilator, the claimant measured a forced expiratory volume ("FEV") of 1.14, twenty-eight percent of the predicted normal value of 4.33. (R. 15, 195-96).

In an October 21, 2005 disability hearing, the ALJ found that the claimant had not engaged in substantial gainful activity since September 11, 2001; that the claimant suffered severe impairments; that the claimant's impairments did not meet or medically equal an impairment listed in 20 C.F.R. § 404.P. App. 1.; that the claimant could not perform his past relevant work; that the claimant had the residual functional capacity ("RFC") to perform a significant range of sedentary work; that the claimant was capable of making a vocational adjustment to jobs existing in significant numbers in the national economy; and that the claimant had not been disabled at any time. (R. 20-30). In granting review of the ALJ's decision, the Appeals Council remanded the claim to the ALJ, with instructions to

> give further consideration to the treating source opinions pursuant to the provisions of 20 C.F.R. § 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence . . . [and to] further evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation

6

>of symptoms (20 C.F.R. § 404.1529 and 416.929) and Social Security Ruling 96-7p.

(R. 47-48).

On remand, the ALJ presented a hypothetical to a Vocational Expert ("VE") for evaluation of whether jobs for someone of the claimant's RFC and skill set were substantially available in the national economy. (R. 254-56). In this hypothetical, the ALJ imposed limitations considered at the previous hearing and additionally limited the VE to considering jobs in which the claimant would not stoop, kneel, crouch, crawl, or balance; and in which he would not walk or stand more than occasionally. (R. 254). The ALJ stated that he "rejects the opinion of Dr. McCutcheon," noting that "the final responsibility for deciding the issue of disability is reserved to the Commissioner." (R. 16-17). The ALJ also acknowledged that the claimant napped during the afternoons, but found "no credible evidence to show that this is a medical necessity." (R. 17). The ALJ again found that the claimant was not disabled. (R. 18). The Appeals Council this time denied review of the ALJ's decision, making the Commissioner's decision final. (R. 4-6).

### V.  Issues Presented

In this appeal, the claimant alleges that the ALJ erred in the following five ways:

(1) By failing to comply with the Appeals Council's Remand Order of March 6, 2006;

(2) By failing to develop the record regarding whether the claimant's chronic obstructive lung disease meets or equals the requirements of Listing 3.02A;

(3) By failing to set forth the requisite good cause for rejecting Dr. McCutcheon's opinion;

(4) By not basing his RFC finding on substantial evidence; and

(5) By not basing his credibility finding on substantial evidence.

The claimant's third and fourth arguments rely upon the same alleged error: the ALJ's apparent

7

rejection of Dr. McCutcheon's medical opinion. Accordingly, the court will first address those two arguments together before considering Claimant's remaining arguments individually.

## VI.  Discussion

**A.    The ALJ erred by not articulating good cause for rejecting the opinion of a treating source, or, alternatively, for not formulating an RFC based on substantial evidence.**

The claimant argues that the ALJ rejected Dr. McCutcheon's opinion without setting forth the requisite good cause and, consequently, forumulated an RFC that is not based on substantial evidence. The law is well established in the Eleventh Circuit that the ALJ must accord substantial weight to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause exists for not doing so. *See Phillips v. Barnhart*, 357 F.3d 1232 (11th Cir. 2004). Good cause to discount a physician's opinion exists where (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* at 1240-41 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Further, where the ALJ disregards the opinion of a treating physician, the ALJ must clearly articulate his reasons for doing so. *Id.*  at 1241.

Dr. McCutcheon found that the claimant could not climb, balance, stoop, kneel, crouch, crawl, or work in high, exposed places; that the claimant could only occasionally push/pull and reach overhead; that the claimant could not lift or carry objects weighing greater than ten pounds; that the claimant could walk for one hour, stand for two hours, and sit for four hours in an eight-hour day; that the claimant could tolerate occasional exposure to vibration, close proximity to moving mechanical parts, and driving; and that the claimant could not tolerate extreme temperatures, wetness, humidity, or exposure to fumes, noxious odors, dusts, mists, gasses, or poor ventilation.

(R. 185-86). Dr. McCutcheon also opined that the claimant suffered "disabling shortness of breath."

In reviewing the hearing transcript and the ALJ's written decision in this case, the court has great difficulty discerning the weight given to different portions of Dr. McCutcheon's opinion. For instance, the ALJ stated in his hearing decision:

> The undersigned rejects the opinion of Dr. McCutcheon, a treating physician, who stated that the claimant is "extremely short of breath" with wheezing, decreased oxygen saturation, dizziness, and headaches. She opined that [the claimant] suffers from "disabling shortness of breath." The undersigned notes that the final responsibility for deciding the issue of disability is reserved to the Commissioner of the Social Security Administration (Social Security Ruling 95-6p).

(R. 16-17). Similarly, the ALJ stated at the hearing:

> The most glaring thing in that exhibit is shortness of breath and in paragraph six on page two the doctor has hand scribbled "disabling shortness of breath." That statement is of itself an opinion reserved to the Commissioner and must be given little weight for that reason. I am cognizant of the impairment, impairment number one which I found to be severe–asthma.

(R. 253).

The court recognizes that an opinion that a claimant is disabled is not a medical opinion, but is reserved to the Commissioner as an administrative finding that is dispositive of a case. 20 C.F.R. § 404.1527(e). Therefore, Dr. McCutcheon's characterization of the claimant's condition as "disabling" was a conclusory opinion appropriately rejected by the ALJ. The ALJ properly articulated his reasons for rejecting this conclusory opinion by stating that "the undersigned notes that the final responsibility for deciding the issue of disability is reserved to the Commissioner of the Social Security Administration." (R. 16-17).

Yet, while stating he "rejects" Dr. McCutcheon's opinion, the ALJ seems to have accepted *some* of Dr. McCutcheon's opinion. In fact, the ALJ formulated an RFC that incorporated many of

the limitations that Dr. McCutcheon enumerated:

> He can perform the exertional demands of sedentary work, occasionally standing and walking. He cannot work with exposure to temperature extremes, humidity, unprotected heights, or pulmonary irritants. He occasionally can work with exposure to vibration and moving machinery, and he occasionally can drive. He cannot climb stairs, ramps, or ladders. He cannot stoop, kneel, crouch, crawl, or balance. He occasionally can stand and walk. He occasionally can push or pull with the upper and lower extremeties.

(R. 15).

Other limitations from Dr. McCutcheon's opinion, however, are neither included in the RFC nor expressly rejected. The most glaring example involves Dr. McCutcheon's opinion that the claimant can sit for a maximum of four hours in an eight-hour day. In finding that the claimant can perform sedentary work, the ALJ implicitly concludes that the claimant can sit for up to six hours in an eight-hour day. *See* SSR 96-9p, *available at* 1996 WL 374185 (S.S.A. 1996) (defining sedentary work to include sitting for up to six hours per workday). Thus, the court cannot determine whether the ALJ rejected the four-hour limitation on sitting or simply overlooked it. Consequently, the court must reverse the Commissioner's decision and remand this case for further proceedings. Specifically, on remand, the Commissioner must either articulate good cause supported by substantial evidence for rejecting the limitations noted by Dr. McCutcheon or, alternatively, must revise the RFC to take into consideration all limitations not rejected for good cause.

**B.     The ALJ adequately developed the record, and his finding that the claimant's condition did not meet or equal the requirements for Listing 3.02A is supported by substantial evidence.**

The claimant next avers that the ALJ committed reversible error by failing to develop the record regarding whether the claimant's condition meets or equals the requirements for Listing 3.02A, Chronic Obstructive Pulmonary Disease ("COPD"). Specifically, the claimant contends

10

that the ALJ erred by not determining whether the use of bronchodilators in FEV testing was contraindicated and by not ordering a consultative examination because the FEV test was improperly performed when one was necessary to make an informed decision.

"The claimant bears the burden of proving that an impairment meets or equals a listed impairment." *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). On the other hand, because a hearing before an ALJ in a Social Security matter is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *but see Ingram v. Astrue*, 496 F.3d 1253, 1269 (11th Cir. 2007) (stating that "even though Social Security hearings are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits"). The ALJ's obligation, however, is limited:

> The [ALJ] has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision.

*Ingram*, 496 F.3d at 1269.

The claimant's FEV test does not constitute evidence that the claimant's impairment meets the threshold requirements of Listing 3.02A. Listing 3.02 requires a person of the claimant's height to measure an FEV of less than or equal to 1.55. 20 C.F.R. § 404.P. App. 1. This measurement should represent the largest of *at least three* satisfactory forced expiratory maneuvers. *Id.* The Regulations require the examiner to administer an aerosolized bronchodilator and have the patient repeat these maneuvers if the pre-bronchodilator FEV is less than seventy percent of the predicted normal value. *Id.* While the claimant performed pulmonary function testing in which he produced an FEV of 1.14–which, if properly obtained, would meet the threshold requirement of 1.55 or less for COPD–the test did not comply with

11

SSA guidelines.  (R. 15).  The claimant did not perform three maneuvers to show that the measurement relied upon was the highest of the three; nor did he perform the maneuvers after the use of bronchodilators (though the FEV of 1.14 was only twenty-eight percent of the predicted normal value of 4.33) or, alternatively, ensure that the report clearly stated the reason for the contraindication of the use of bronchodilators.  (R. 195).  Because these variances from the regulations were material, the results produced from testing conducted under such conditions are not evidence that the claimant's condition meets or exceeds threshold requirements for the listed condition.

   The ALJ was not required to order a properly conducted FEV test because the record contains  sufficient evidence for the ALJ to make an informed decision apart from a consultative exam properly administering an FEV test.  In this case, the claimant underwent a sleep study by Dr. Morris and a consultative examination by Dr. Laughlin, in addition to visiting Dr. McCutcheon and others at the Lexington Clinic eleven times between July 15, 2004 and June 13, 2006.  (R. 140-41, 142-48, 150-60, 191-93).  While numerous examiners noted wheezing and other conditions at various times, Dr. Morris found that the claimant's lungs were "clear" in his last examination.  (R. 171).  Additionally, Dr. Laughlin found that  five specific pulmonary ailments, including wheezing, were not present.  (R. 141).  These sets of findings, coupled with other unremarkable examinations and conservative treatment recommendations from multiple physicians, provided the ALJ with multiple medical perspectives spanning twenty-three months of observations of the claimant's condition, including multiple evaluations tending to show that treatments, including the use of a bronchodilator, substantially mitigated the claimant's symptoms.  Further, the claimant's abstention from seeking medical treatment for three years–from five months prior to the date of alleged onset to three months after he filed his

claim–indicates that he was able to control his symptoms during that time. Therefore, the record contains substantial evidence to support the ALJ's finding that the claimant did not meet or equal the threshold requirements for Listing 3.02A, even without a properly conducted FEV test.

**C. The ALJ's credibility finding is based on substantial evidence.**

The claimant also avers that the ALJ's credibility finding that the claimant's alleged symptoms–specifically lack of nocturnal sleep necessitating an extended afternoon nap–could not reasonably be expected to result from his underlying medical condition was not based on substantial evidence. In evaluating pain and other subjective complaints, the Commissioner must consider whether the claimant showed an underlying medical condition, and either

> (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); 20 C.F.R. § 404.1529.

In this case, the ALJ found that the claimant suffers from obstructive sleep apnea. (R. 13). Also, the claimant subjectively complained of drowsiness due to lack of quality, nocturnal sleep, and further complained that this drowsiness forced him to take naps each afternoon. (R. 262). The question then becomes an assessment of credibility based on the three-part subjective pain test. *Holt*, 921 F.2d at 1223. While the claimant suffers from sleep apnea, and therefore meets part one of the pain standard, no evidence in the record indicates that the sleep apnea is severe to the extent that he cannot control it. For instance, tests conducted by Dr. Morris showed its severity to be reduced by *eighty-five percent* through the use of a CPAP machine. (R. 143). Evidence that the claimant can control his sleep apnea through the use of a CPAP machine is an

adequate basis for a reasonable mind to conclude that the severity of the claimant's sleep apnea could not be reasonably expected to necessitate regular, extended naps such as those the claimant contends he must take. Additionally, the claimant's abstention from seeking medical treatment for three years–from five months prior to the date of alleged onset to three months after he filed his claim–tends to indicate that he was able to control his symptoms during that time. Therefore, the ALJ properly applied the three-part subjective pain test, and based his credibility finding – that the claimant did not satisfy the second part of this test – on substantial evidence.

**D.      The ALJ did not fully comply with the Appeals Council's Remand Order of March 6, 2006.**

Finally, the claimant makes a "catch-all" argument that subsumes all those previously discussed: specifically, that the ALJ failed to comply with the Appeals Council's Remand Order by not giving further consideration to treating source opinions (discussed in Section A above), by not explaining the weight given to such opinion evidence (discussed in Section A above), and by not further evaluating the claimant's subjective complaints in accordance with disability regulations and rulings (discussed in Section C above). As discussed in more detail in Section A above, the ALJ erred by either rejecting Dr. McCutcheon's opinion without articulating good cause supported by substantial evidence *or* by failing to formulate an RFC based on all limitations identified by Dr. McCutcheon.

On the other hand, the ALJ adequately evaluated the claimant's credibility in accordance with 20 C.F.R. § 404.1527. *See* Section C above. The ALJ also explained his rationale, articulating the three part "pain standard" for evaluating complaints of pain and other subjective symptoms. (R. 16). He further explained that under that test, the claimant satisfied the requirement of an underlying medical condition but that the claimant failed to show that the

condition could reasonably be expected to necessitate daytime naps. (R. 16-17). As the court discussed in detail in Section C, the ALJ concluded that the claimant could control his sleep apnea so that it did not preclude nocturnal sleep.

By adequately evaluating the claimant's credibility under the applicable pain standard; the ALJ complied with the Appeals Council's instruction to further evaluate the claimant's subjective complaints. However, for the reasons discussed in Section A, the ALJ did not adequately consider the treating source opinion of Dr. McCutcheon. Consequently, this court must reverse and remand to the Commissioner for further proceedings, as discussed above.

## VII. Conclusion

For the reasons stated above, the court concludes that the decision of the Commissioner is not supported by substantial evidence and therefore must be REVERSED and REMANDED. The court will enter a separate revised final order in accordance with this memorandum opinion.

DATED this 12th day of August, 2008.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE